NAT TEPPER, Appellant, v SAMUEL TANNENBAUM et al., Respondents.

First Department, December 28, 1978

**APPEARANCES OF COUNSEL**

*Lawrence K. Feitell* of counsel *(Barry Smith* with him on the brief), for appellant.

*David A. Beale* of counsel *(Friend, Perles, Dorfman & Kleefeld,* attorneys), for respondents.

## OPINION OF THE COURT

MURPHY, P. J.

The facts underlying this action have been thoroughly set forth in the opinion of the trial court (87 Misc 2d 829) and they will not be repeated in this opinion. No dispute is presented on appeal as to Daniel's right to read into evidence Sam's examination before trial *(Foro v Doetsch,* 39 AD2d 150, affd 33 NY2d 767; *Ward v Kovacs,* 55 AD2d 391, 400, 401). However, issues are raised as to (1) Daniel's right to testify concerning his "personal transactions" and "communications" with Sam concerning the alleged maintenance contracts, and (2) Daniel's right to introduce into evidence the taped recording of a conversation allegedly had with Sam.

Relying upon *Foro v Doetsch (supra)* the trial court found that the submission of Sam's examination before trial did not constitute testimony of the deceased person given in evidence within the meaning of the waiver provision of CPLR 4519 (87 Misc 2d 829, 838). Since Daniel was thus incompetent to testify as to the circumstances surrounding the recording of the tape, the court further found that Daniel could not authenticate the tape (87 Misc 2d 829, 836).

The Appellate Division majority in *Foro v Doetsch* (39 AD2d 150, 152, *supra)* never reached the evidentiary question raised by the appellants therein under CPLR 4519. The majority, in reversing, merely found that there was insufficient evidence to support a grant of equitable relief to the respondents. However, Justice GREENBLOTT, in a concurring opinion that was joined by the majority, found that the testimony at an examination before trial introduced by the respondent did not constitute the testimony of the deceased person within the meaning of the waiver provisions of CPLR 4519 *(supra,* p 158). The Court of Appeals affirmed the Third Department's order without opinion. The law is clear that an affirmance without opinion by the Court of Appeals indicates that it is concurring only in the result reached by a lower court and not for the reason given in the opinion of the lower court. *(Rogers v Decker,* 131 NY 490, 493; *Scott & Co. v Scott,* 186 App Div 518, 526.) Hence, the specific reason for the affirmance by the Court of Appeals in *Foro* remains a matter of conjecture. It is quite possible that the Court of Appeals affirmed solely for the

reason stated in the majority *Per Curiam* rather than for the additional ground advanced in Justice GREENBLOTT's concurring opinion. Therefore, in resolving the issues presented, *Foro v Doetsch* (39 AD2d 150, affd 33 NY2d 767, *supra)* remains persuasive but not binding authority.

█ We would permit Daniel to testify as to his "personal transactions" and "communications" with Samuel under the exception to CPLR 4519 that permits such testimony where the testimony of the deceased has been given in evidence. In this instance, Daniel placed Samuel's examination before trial in evidence.

In the recent case of *Ward v Kovacs* (55 AD2d 391, 400-404), a majority in the Second Department permitted a plaintiff in a medical malpractice action to testify against a doctor's estate under this same exception where the plaintiff had read into evidence the doctor's deposition. We agree with the majority's reasoning that this exception to CPLR 4519 was controlling *(supra,* p 401):

"CPLR 4519 provides, in pertinent part, that: 'Upon the trial of an action * * * a party or a person interested in the event * * * shall not be examined as a witness in his own behalf or interest * * * against the executor, administrator or survivor of a deceased person * * * concerning a personal transaction or communication between the witness and the deceased person * * * except where the executor, administrator, survivor * * * or person so deriving title or interest is examined in his own behalf, *or the testimony of the lunatic or deceased person is given in evidence,* concerning the same transaction or communication' (emphasis supplied). Thus, the language of the statute, if read literally, would appear to permit testimony by the surviving adverse party as to the particular transaction or communication, so long as the deceased's deposition has been 'given in evidence' at the trial by *any* party. Nevertheless, and perhaps because of the juxtaposition of the words preceding the first conjunctive 'or' italicized above, it has heretofore been argued that the exception permitting the survivor to testify is based upon waiver (see *Foro v Doetsch,* 39 AD2d 150, 158 [concurring opn of GREENBLOTT, J.], affd 33 NY2d 767; see, also, *Miller v Adkins,* 9 Hun 9), and that the decedent's estate must take the initiative to 'open the door' before such testimony may be received (see 5 Weinstein-Korn-Miller, NY Civ Prac, par 4519.23).

"Since the statute does not limit the exception *in haec*

*verba* to those cases in which the deceased's representative has introduced the deposition into evidence, the question to be determined is whether such qualification should be read into the statute by implication."

The *Ward* majority, after noting the displeasure of many leading evidentiary authorities with regard to the soundness of the "Dead Man's" Statute, refused to expand CPLR 4519 by implication. For the following policy reasons, it permitted the plaintiff to testify against the doctor's estate *(Ward v Kovacks,* 55 AD2d 391, 403-404, *supra):*

"Whatever merit the rule of survivor disqualification may still have in our law, it must be grounded, ultimtely, on the concept that where death has sealed the lips of one of the parties to a personal transaction, the law, for the protection of his estate and his survivors, should and ought to seal the lips of anyone else making a claim against the estate (5 Weinstein-Korn-Miller, NY Civ Prac, par 4519.03). That rationale can only be marginally applicable to the facts at bar; however, where the decedent has stated his version of the incident for the record, under oath and in an adversary context, and thereafter died. Under such circumstances, the fact that he cannot subsequently rebut, by live testimony, any contrary version as testified to at the trial, is unfortunate, and is a proper subject of discussion both during summation and in the charge, but it does not appear to be a sufficient independent ground to require the exclusion of such testimony *in toto.*

"It is not open to question that counsel for the decedent could have offered the doctor's deposition as primary evidence of the facts contained therein, despite the fact that he was no longer available for cross-examination before the jury. Under the facts of this case, however, the surviving adverse party, whose testimony contradicted that deposition, was available for cross-examination at the trial, and therefore subject to the jury's scrutiny. I believe that there is at least as much of a safeguard for truth in the latter situation as in the former (see, generally, Ann., 158 ALR 306).

"There is, however, a more fundamental principle at stake. The purpose of a trial is to search for the truth; it is not supposed to be a contest of strategies. Where a party has died after his deposition has been taken, we should not encourage a situation where counsel for the decedent is placed in the position of being able to determine whether it is better for his client that the deposition be admitted into evidence, thus 'opening the door' to 'survivor' testimony, or whether it is

perhaps wiser to withhold it, and thus leave the 'door' closed. His decision under such circumstances will be made in his role as an advocate, and not as a disinterested 'officer of the court', searching for the truth of the matter wherever it may lie. Absent specific statutory proscription, it should be the court, and not the advocate, which makes this decision, and in view of the protective ambience surrounding an examination before trial, it is my opinion that the 'balance' is heavily weighted in favor of (1) disclosure and (2) the admissibility of 'survivor' testimony."

Based upon a strict construction of the subject statute and in recognition of the need for a more liberal and fair approach to this evidentiary area, we would permit Daniel to testify about his alleged conversations with Samuel. On balance, the interest of justice will be better served if a trier of fact, in a dispute involving a deceased person, is permitted to consider more rather than less of the proffered evidence.

In light of the foregoing, we would find that Daniel was competent to authenticate the taped recording that was allegedly taken of Samuel. Assuming that Daniel can factually prove that the tapes are authentic, audible, unerased and intelligible, there is no reason why these tapes should not be received in evidence. (See, generally, Fisch, NY Evidence [2d ed], § 145, pp 85-86.) Since the trial court never reached the issue of authentication, this matter should be determined at the retrial of this proceeding.

Accordingly, the judgment of the Supreme Court, New York County (FEIN, J.), entered September 7, 1976, dismissing the complaint, should be reversed, on the law, and this matter should be remanded for a new trial, with costs to abide the event.

LUPIANO, J. (dissenting). We dissent on the opinion of Justice FEIN at Trial Term (87 Misc 2d 829) and on the rationale of the concurring opinion of Justice SHAPIRO in *Ward v Kovacs* (55 AD2d 391, 404-405).

MARKEWICH and SANDLER, JJ., concur with MURPHY, P. J.; LUPIANO and SULLIVAN, JJ., dissent in an opinion by LUPIANO, J.

Judgment, Supreme Court, New York County, entered on September 7, 1976, reversed, on the law, and this matter remanded for a new trial, with $75 costs and disbursements of this appeal to abide the event.