OPINION OF THE COURT
Carolyn E. Demarest, J.
Defendant Selective Way Insurance Company (Selective) moves, pursuant to CPLR 3211 (a) (1) and (7), for an order dismissing plaintiff’s complaint insofar as asserted against it. Selective further requests that, pursuant to CPLR 3211 (c) and *736 3001, the court treat its motion as one for summary judgment and declare that Selective has no obligation to pay the asserted claims made by plaintiff Klein’s Moving & Storage, Inc. (Klein).
On January 3, 2001, a fire occurred at a warehouse storage facility owned by Klein and located at 1325 Atlantic Avenue, Brooklyn, New York. At the time of the fire, the contents of the warehouse were insured against loss under a Commercial Inland Marine insurance policy issued by Selective (the policy). Specifically, the policy provides coverage for a loss to “covered property” for any “covered causes of loss.” In part, the covered property consisted of “lawful goods and merchandise, the property of others, that you [Klein] have accepted for storage or processing under a warehouse receipt or storage contract as a warehouseman or bailee.” The term “covered causes of loss” is defined under the policy as Klein’s “legal liability as a warehouseman or bailee for direct physical ‘loss’ to Covered Property except those causes of ‘loss’ listed in the Exclusions.”
In addition to these coverage provisions, the policy contains a provision spelling out Klein’s duties in the event of a loss. Among other things, the policy requires Klein to “[t]ake all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of this claim.”
Following the fire, Klein found it necessary to move and manipulate the remaining contents in the warehouse while the damaged portions of the facility were cleaned, repaired and repainted. According to Klein, the costs associated with the moving and manipulating of these contents amounted to $30,851.25. To date, Selective has made payments pursuant to the policy of $35,634.89 to Klein and $47,296.12 to Klein’s customers for direct physical losses sustained. However, Selective has refused to pay Klein for any of the costs associated with moving and manipulating the warehouse contents despite Klein’s demand that it do so. Accordingly, by summons and complaint dated December 18, 2002, Klein brought the instant breach of insurance contract action against Selective and defendant Westport Insurance Corporation (Westport)* seeking $30,851.25 in damages.
In moving for dismissal and summary judgment, Selective argues that the costs Klein incurred in moving and manipulat *737 ing the contents of the warehouse while the facility was being cleaned, painted, and repaired are not covered under the policy. Specifically, Selective points out that under the unambiguous language of the policy, moving and manipulation of covered property necessary to restore the premises do not constitute a covered cause of loss inasmuch as they do not involve a direct physical loss to covered property.
In opposition to Selective’s motion, Klein points to the aforementioned policy provision requiring it to take measures to protect the covered property from further damage in the event of a loss and to keep a record of the expenses incurred in fulfilling this duty “for consideration in the settlement of the claim.” Klein reasons that the moving and manipulation costs are covered under this provision inasmuch as the removal and manipulation of the covered property was necessary in order to protect it from further damage during the repair work which resulted from, and was necessitated by, the original covered cause of loss.
It is undisputed that the sums demanded are solely related to moving covered property in order to repair and restore plaintiffs premises. While movant’s papers are defective in that they do not contain a copy of the complaint, the complaint has been supplied to the court at oral argument. The substance of plaintiffs complaint, verified only by counsel, while acknowledging “11. That as a result of damage and losses incurred by the plaintiff in the aforesaid fire, the defendants have each made payments to the plaintiff pursuant to the coverage afforded by the aforesaid insurance policies issued by the defendants,” asserts “12. That in order to clean, repair and paint the aforesaid premises where the fire occurred, all the contents in the said premises had to be moved and manipulated” and demands $30,851.25 for the costs incurred in such moving and manipulation “in order to restore the premises to its original condition.” In responding to defendant Selective’s motion, plaintiff has provided only the affirmation of counsel. No affidavit of any person with actual knowledge of the circumstances has been provided. There is, therefore, no factual information to suggest any potential for additional damage to covered property should the acts for which plaintiff seeks to be compensated had not been taken other than damage resulting from repair and painting of the premises. It is clear that the only reason for the movement and manipulation was to paint and restore the premises, which are not covered by the subject policy issued by Selective.
*738 Where, as in this case, no material questions of fact are present, the interpretation of a contract of insurance is a question of law for the court to determine. (Fanger v Manhattan Life Ins. Co., 273 AD2d 438 [2d Dept 2000].) While ambiguities in an insurance policy must be construed against the insurer (id.), “[w]here the provisions of an insurance contract are clear and unambiguous, the courts should not strain to superimpose an unnatural or unreasonable construction.” (Goldman & Sons v Hanover Ins. Co., 80 NY2d 986, 987 [1992].) Am insurance policy must be interpreted “in light of ‘common speech’ and the reasonable expectations of a businessperson.” (Belt Painting Corp. v TIG Ins. Co., 100 NY2d 377, 383 [2003].)
It is clear from the plain language of the Commercial Inland Marine policy at issue and the reasonable expectations to be derived therefrom that the policy was intended to provide compensation for actual loss and/or damage to the property of plaintiff and that of third parties stored in plaintiff insured’s premises. Neither party has offered any specific legal precedent for the interpretation of this standard policy and both parties have represented that no such authority can be found. However, looking to the terms of the contract, any payment of compensation requires that the “Covered Property” sustain a loss from a “Covered Cause.” Although the policy does provide coverage for the costs of debris removal of covered property caused by or resulting from a covered cause of loss, there is no suggestion that the moving and manipulation here related to debris removal. The complaint itself suggests that the property that was moved was not being discarded but was being relocated temporarily for the convenience of workers and/or was being protected from potential damage resulting from remedial attention to the building. According to the allegations, no loss within the meaning of the policy has been sustained.
Plaintiff’s reliance on the provision requiring it to “Take all reasonable steps to protect the Covered Property from further damage” and maintain a record of expenses for consideration in settlement of a claim is misplaced. That provision further provides: “This will not increase the Limit of Insurance. However, we will not pay for any subsequent ‘loss’ resulting from a cause of loss that is not a Covered Cause of Loss.” (Emphasis added.) The import of such caveat, in the context of its recitation within the section entitled “Duties In The Event Of Loss,” is to impose upon the insured the duty to mitigate the extent of the loss by protecting the covered property from *739 further damage, as, for example, from exposure to adverse weather conditions, following the incident of loss due to a covered cause. The express language of the policy provision relied upon precludes coverage for subsequent loss resulting from a cause that is not a covered cause. Covered causes of loss include any “Risk of Direct Physical ‘Loss’ to Covered Property” not excluded. Among the exclusions to covered causes are: “2.e. Processing or work upon the property” unless such work causes a fire or explosion that causes a direct “loss” and “3.c. (4) Faulty, inadequate or defective Maintenance” unless an^ otherwise covered cause results in a loss therefrom. Clearly, painting and repair of the building are not intended to be a “Covered Cause of Loss” unless such activities themselves cause an event, such as a fire or explosion, that results in loss.
In any event, the claim here is not for actual direct physical loss but for the cost of protecting property from damage that did not occur as a result of restoring the premises. The construction of the policy suggested by plaintiff is exceedingly strained and illogical and does not comport with the express terms of the contract taken as a whole. It is apparent that the language in the policy requiring the insured to maintain a record of expenses incurred in protecting the covered property “for consideration in the settlement of the claim” was intended to provide proof that appropriate steps had been taken following loss or damage to prevent further damage so that the true extent of the loss resulting from a covered cause would be ascertainable and would not include damage that had occurred subsequent to the covered cause of loss due to the negligence of the insured.
In Shapiro Realty Co. v Agricultural Ins. Co. (287 AD2d 389, 389-390 [1st Dept 2001]), a policy provision similar to that herein requiring the insured to “take all reasonable steps to protect the covered property from further damage by a covered cause of loss” was held to entitle the insured to reimbursement for the costs of demolition and repair where a concrete slab had partially collapsed as a result of hidden decay and the policy expressly provided coverage for such loss or damage. A similar result was reached in Royal Indem. Co. v Grunberg (155 AD2d 187, 188-189 [3d Dept 1990]), wherein the costs of preventing the imminent collapse of the insured dwelling were recoverable where the policy expressly covered a “collapse” or “partial collapse” due to defective materials or methods of construction and the risk of imminent collapse had been caused by substandard foundation materials and improper site prepa *740 ration and construction. The Court refused to interpret the language of the policy insuring against loss as a result of “collapse” to require that an actual complete collapse must have occurred in order to permit recovery, finding that the mandate to make necessary repairs to protect the property from further damage permitted recovery for the costs of repair where the degree of proven structural impairment was sufficient to constitute a “collapse” in most jurisdictions and created the imminent danger of total collapse. The logic of these decisions in permitting recovery for the costs incurred in preventing a much greater loss from a covered cause is consistent with this court’s interpretation of the subject policy provision. Both cases are inapposite to the case at bar, however, because in both Shapiro and Royal, the cause of loss was expressly covered by the policy and an actual loss to covered property had been sustained. In this case, painting and repairs are not “covered causes of loss,” nor did such activities prevent further direct loss to covered property.
“While it is true that policies of insurance are to be construed liberally in favor of the insured and strictly against the insurer, where the provisions of the policy are clear and unambiguous, they must be given their plain and ordinary meaning * * (Government Empls. Ins. Co. v Kligler, 42 NY2d 863, 864 [1977].) Given the undisputed facts presented, and the unambiguous intent of the policy to insure against actual loss or damage to covered property (which does not include the building) resulting from a covered cause, defendant Selective’s motion to dismiss pursuant to CPLR 3211 (a) (1) and (7) is granted and, pursuant to CPLR 3211 (c) and 3001, it is determined that defendant Selective Way Insurance Company has no obligation under the policy to compensate plaintiff for the costs incurred in moving property within its warehouse so as to permit cleaning, painting and restoration of the premises.

 According to Klein’s complaint, Westport also issued an insurance policy which afforded coverage for the losses Klein incurred in the fire. Presumably, the Westport policy covered the warehouse itself.